Alright, Mr. Leeper, we're ready when you are. May it please the court, my name is John Leeper, I'm from El Paso, Texas, and I represent the appellant, Mr. Jeffrey Allen Lindsay. Your Honor, the issue in this case is whether Mr. Lindsay's complaint states a claim for relief that is plausible on its face. Mr. Lindsay respectfully submits that his complaint establishes a facially plausible claim for relief from the $423,000 of penalties that he paid to the Internal Revenue Service because his failure to file his tax returns on time, his failure to pay his taxes on time, and his failure to make estimated tax payments was due to reasonable cause and was not due to willful neglect. Your Honor, the law recognizes two ways that a taxpayer can establish reasonable cause that are applicable to this case. The first way to establish reasonable cause is to show that the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file his returns on time and unable to pay his taxes on time. The second way to show reasonable cause is to establish that the taxpayer was under a disability, and the Supreme Court in Boyle specifically recognized that ground, saying that if for some reason the taxpayer is incapable by objective standards of meeting the criteria of ordinary business care and prudence, then that can too be grounds for reasonable cause. Mr. Lindsay respectfully submits that his complaint states a claim for relief, a plausible claim for relief, because he has established either that he exercised ordinary business care and prudence or he was effectively disabled and therefore incapable by objective standards of meeting the criteria of ordinary business care and prudence. The magistrate judge below agreed with Mr. Lindsay, and the magistrate judge made two at least two crucial findings. First he found that none of the cases cited by the Internal Revenue Service unequivocally demonstrate that Mr. Lindsay's argument is foreclosed as a matter of law. Second, he found that the combination of circumstances confronting Mr. Lindsay may establish reasonable cause. When you're considering this case, Your Honor, I would like you to keep in mind a couple of critical points throughout. First, there are three different penalties at issue in this case, and therefore three different claims for relief. The government wants you to conflate your analysis of all three penalties under Boyle. However, Boyle was a failure to file case. This court has expressly recognized that all three penalties require a different analysis. The Fifth Circuit has not and should not extend the so-called bright-line rule of Boyle to the failure to pay penalty nor to the estimated tax payment penalty. All of the penalties require a separate and different analysis. Your Honor, the magistrate judge found that the combination of circumstances that Mr. Lindsay faced may establish reasonable cause. And I want to take just a minute to talk about that combination of circumstances. First, Mr. Lindsay was in prison. Mr. Lindsay had been in prison before, and when he had previously gone to prison, he gave his father a power of attorney and directed his father to file his returns and pay his taxes, which his father did. And when Mr. Lindsay got out of prison the first time, he didn't face any problems with the Internal Revenue Service. Mr. Lindsay was incarcerated for a second time. When he was incarcerated a second time, he gave his trusted friend a universal power of attorney. Just to satisfy my curiosity, what was he incarcerated for the first time? Your Honor, I cited the docket number. I'm not absolutely positive what it was for. I believe it was some drug-related offense. What was the second one for? I believe it was also a drug-related offense. Possession, use, distribution, you don't know? I do not know, Your Honor. Could your curiosity not be greater than mine? I didn't think it was very relevant to the . . . Well, it's not relevant, but, you know, it shapes the deal. You got to have context in order to understand the content. So it's not every prisoner who's in jail who's able to, you know, do what this client does, pay all that stuff, sue his business partner, pay the taxes and all that. Most of the prisoners we get who file, not in his shape. I'm not putting a thumb on the scale. It's just to understand the case. You know, he's out, as you say. His dad did it. Then he gets back in. Yes, sir. And then he gets his best friend . . . Yes, sir. . . . pay the taxes. Best friend scoffs off the money. So I was just curious. Yes, sir. But if you don't know, I don't want to take your time. But I was curious because I was curious as to whether it was white collar and or related to the business dealings and that kind of thing. That's really when I read the briefing that I was curious about whether the crimes of which he was in jail were at least ancillary to the kinds of conduct here. But if it's drugs, then apparently it's not. I believe it was drug-related offenses, Your Honor, and I believe that I cited the docket number in both. So you want me to go look the docket up instead of you having a sticky note to tell me what . . . Press on, Counselor. I'm the only one in here who was curious. Go ahead. So when he was incarcerated the second time, he appointed his best . . . his trusted friend because his father was deceased, he didn't have a wife, and he didn't have children. Certainly a moral to that story. Beware who your best friend is, right? Yes, sir. All right. Go ahead. While he was incarcerated, Mr. Lindsey did the prudent thing, and he directed his power of attorney to pay his . . . to file his returns and to pay his taxes. While he was incarcerated, he did the prudent thing and asked his power of attorney if he had in fact paid his taxes and filed his returns. His power of attorney assured him that he had. But instead of filing his returns and paying his taxes, his power of attorney embezzled literally hundreds of thousands of dollars from him. Mr. Lindsey recovered a final judgment of $705,000 of actual damages. Was that adage with friends like these, I don't need enemies? Yes, sir. Go ahead. And he recovered $1 million in punitive damages against his power of attorney. Of course, he didn't recover any money from his power of attorney, not that that would make a difference. So was the money he recovered some of his own . . . I mean, money that had been absconded. I mean, was he recouping his own . . . He didn't recover any of that, but that's what his . . . he got a judgment for actual damages of $705,000 and punitive damages of $1 million. He got one of those paper judgments. Yes, sir. Yeah. Exactly. Got it. Another circumstance that has to be considered besides the fact that Mr. Lindsey was in prison, the fact that his power of attorney was stealing his money, is the complexity of Mr. Lindsey's returns. Any notion that Mr. Lindsey could have possibly or should have prepared his own returns should be dispelled quickly. All right. Can I ask you one more informational question? Yes, sir. What was the line of business that he was in which generated the substantial tax consequences? Okay. Well, to look at 2013 as an example, okay, first of all, and I'm answering your question, Mr. Lindsey is not a wage earner with withholding from his wages. He doesn't have a simple W-2 with withholding. Mr. Lindsey's 2013 income tax return is 22 pages long. Mr. Counsel, I'm not trying to put you in a corner. I just wanted to know. I was just asking what was his occupation? You know, was he a farmer? Was he a . . . That's all I was asking. Well, let me tell you, Your Honor, he has multiple businesses, sir. His 2013 return reports a total income of $1,016,746. It reports a casualty loss of $207,448. It reports net income from water sales of $392,193. It reports Schedule E rental income received in the amount of $490,611. It includes a Schedule C for cattle ranching. He was a cattle rancher. It reports a total liability of $142,000. I'm not going to go through all of his returns, but they are all equally complicated. He has water sales. He has rents. He has a cattle ranch, and he is also the beneficiary of a trust. Okay. He received his income information from the Internal Revenue Service, the 1099s, for that year are 13 pages long. He has 13 pages of 1099s. Well, Counsel, let me . . . What was the occupation of his trusted friend? I do not know the answer to that, Your Honor. I've never been told or heard that they were partners of any kind. I don't know what his trusted friend did. Well, it would be nice to know if his trusted friend had the ability to file himself to prepare the returns, or I guess not. He's going to have to . . . Your Honor, Mr. Lindsey had a CPA in El Paso, Texas. But he didn't give that power to the CPA. He gave it to a friend who then didn't use the CPA. Yes, sir. In other words, Mr. Berkelson should have taken the . . . He's trying to understand exactly how it happened. Counsel, let me ask you this, if I could get sort of building on Judge Higginbotham's point. The factors you've listed here, I'm just sort of cutting to the chase a little bit in terms of how I'm thinking about the case. Incarceration. Well, we've got case law that the district court relied on that says that's not enough. It doesn't excuse reasonable . . . it's not a reasonable justification. Or a disability, or an absence. Then you've got the trusted friend who shouldn't have been trusted, the embezzlement. Well, there's case law that the district court talks about that says that's not enough unless you're in a situation like a company where nobody can control the embezzler, so to speak. I mean, even where there's embezzlement, if there's a supervisor, if there's some way to control, or a power of attorney that was embezzling. The Vaughn case, I think, from the Sixth Circuit. Not enough to excuse compliance. Then you've got the complexity of the returns. I don't know that the district court discussed that as . . . certainly the more complex the return, the more likely you get reasonable justification for not filing. I don't think that's supportable. I guess what I'm getting at is, individually, each of these factors have been rejected under the rules under which we're traveling. Tell me how it is that somehow we get a no, a no, and a no, and we add it up and equal a yes. Because there are no cases that consider any of the combination of circumstances that Mr. Lindsay . . . But how does the combination get us there? That's what I'm grappling with. In other words, I think that the combination of circumstances falls right into footnote six of the Boyle case, that those circumstances effectively rendered him disabled. But the disability cases have really addressed situations where you have literally a capacity issue. For example, I'm struggling with dementia. I don't even know when April 15th is. That's a disability under the cases. I may, Your Honor. The Supreme Court, the exact words that it said was, for some reason. It doesn't say you have to be physically disabled. It doesn't say you have to be in a coma. It says if for some reason the taxpayer is incapable . . . Well, tell me . . . so I get that, but Boyle's progeny, tell me the best case you've got that shows this is a disability. In other words, to distinguish Vaughn, Vaughn wasn't in prison. Mr. Lindsay was 500 miles away from his agent. He couldn't talk business over the telephone. But he revoked the power of attorney. He did, Your Honor. He was able to find out that he was embezzling from him while he was in prison. At some juncture, he did. I mean, I find it hard to believe that he'd have a better case if his power of attorney was successful in embezzling $10 million. But he chose the power of attorney also. Yes, sir. And I read the cases to indicate that that's an important factor also. I think it's a factor, Your Honor. But there's really two types of control to discuss. One is control over your power of attorney. And I respectfully submit that when you're in prison 500 miles away, you can't talk business over the telephone, and you're not getting your bank statements, you can't check to see whether he has, in fact, paid your taxes, then you're not really in control of your power of attorney. But he managed to do an awful lot of stuff from 500 miles away. Your Honor, he was embezzled $700,000. I don't know how well he managed things. All I'm saying, wasn't he in jail when he paid the taxes? He was incarcerated from April 2013. I'm sorry, when he paid? No. In other words, Mr. Lindsey got out of prison, went to his – He did something while he was in prison. Was that filed a lawsuit? Yes, sir. He filed a lawsuit? Yes, sir. He hired a lawyer? Yes, sir. To file a lawsuit? Yes, sir. To get his money back? Yes, sir. From inside the prison? Yes, sir. Your Honor, so if I can finish what I was saying to Judge Wilson, there's two types of control. One is the control of your power of attorney, and one is the control of the circumstances that you're under. And the Internal Revenue Service has specifically determined, in the revenue product that I have cited, that incarceration is a matter that's beyond the taxpayer's control and disability. He got himself in jail. The Internal Revenue Service says incarceration is a matter beyond the taxpayer's control, one that justifies being late and making a rollover. It's recognized by the Internal Revenue Service. Incarceration is a matter beyond the taxpayer's control. For failing to file your tax return? No, sir. For failing to make your rollover within time. But for failing to file the tax returns? There's not a specific finding that incarceration is a matter beyond their control. Well, you're out of time. I'll give you a single sentence. Do you have something you want to say before you sit down for a rebuttal, or do you feel like you've hammered it? Your Honor, I just think at a 12B6 stage, that all the inferences are against Mr. Lindsey, and I don't think that's appropriate. I think he's laid out a claim for reasonable cause of all three penalties. The fact that he had some control shouldn't bore him out. Well, we get your passion, but the problem is the challenge coming back up here. You've got to get past the passion, and you've got to get into what's your best case. And if you're relying on a footnote in Boyle, just hold it. Remonstrations to the contrary, I'm just telling you, if you're relying on a footnote in Boyle as the best proposition to support the passion, when you come back on rebuttal, just be prepared to walk through, you know, what other line of cases help you get there. That's all. I think we have a good grip on the facts here, so I'm just saying it's helpful to us if you go da-da-da-da in terms of what's the best thing to flip the district court here in your favor. That's all I'm saying. When you come back on rebuttal, it's rebuttal. It's not reiterating, you know, the wreck. You got me? I mean, I can anticipate what the Irish is going to say. I'm just saying it's helpful to us if you've got specific cases that fit the situation that may get you where you want to be. Is that okay? Yes, sir. All right. You've got five minutes for rebuttal. All right. Ms. Turbeville, this is the first line of cases they let you all travel? I'm here. It's very exciting. No, I said is this the first line of cases they've let you all travel from DOJ or wherever? Yes, this argument is, yes. You've seen some of my colleagues this week as well. All right. You're up. Thank you very much. Good morning, and may it please the Court. My name is Allison Turbeville, and I represent the United States in this appeal. The Supreme Court in Boyle unanimously held that a taxpayer has a non-delegable duty to file his tax return by the statutory deadline, and that delegating that duty to an agent is not a reasonable cause for his failure to timely file. Taxpayers' argument here is, in essence, the same argument the Court rejected in Boyle. The taxpayers in Boyle argued that they should be excused because they contacted their agent several times to ask about their return, and their agent assured them that their return would be filed timely. Counsel, let me interrupt you. Just a quick question that was on my mind as counsel opposite finished. So I get that argument, but what of counsel's argument that here, because he was incarcerated, there was no way for him to know that his returns weren't filed? In other words, he thought they were being filed, and he's not getting his bank statements. He's not in regular communication. So is that factor different? I hope you'll address that as you go forward. Yes, Your Honor. To answer your question, courts have routinely held, as you noted in talking to my friend, that a taxpayer's incarceration does not establish reasonable cause, and that makes sense. It can't be the case that every taxpayer who is in prison who fails to timely file his tax returns or pay his taxes is excused from his non-delegable duties. And we are not aware of any case, Your Honor, that says that a taxpayer who is incarcerated was disabled for purposes of the reasonable cause exception. Go back to what I'd ask, though, in terms of here he at least was trying to do it. And then we also have the fact that once he got out of prison, he caught everything up. He's actually paid his taxes, paid the penalties. He's not owing the IRS, and he says it's the other way around. But what he says is, I thought my power of attorney was paying the taxes, filing everything I was supposed to file. I asked him to do it. So how was he to know because of his circumstances? And does it matter? Your Honor, we submit that it does not. But to answer your question, taxpayer argues that he had no control at all over his agent while he was in prison. And that's simply not the case. Taxpayer alleged that he selected his agent while he was in prison, and he also fired his agent while he was in prison after finding out that his agent had embezzled from him. So taxpayer does not allege that he had no meaningful way to control his agent at all from prison. He doesn't allege, for example, that he had no access to mail. He doesn't allege that he didn't have access to the Internet or that he was in some way mentally incapacitated or in a coma or in solitary confinement or anything like that. It's possible that he could have alleged those things. The district court gave him an opportunity to amend his complaint after it granted the government's motion to dismiss, and he did not avail himself of that opportunity. So would it have mattered if he had turned this over to a national accounting firm? No, Your Honor. So his reliance is not indexed by the assurance of credibility of a national accounting firm versus just a trusted friend. Your Honor. So under your view, then, it doesn't matter what agent it is. You're arguing that you cannot rely on an agent, period, no circumstances. That's correct, Your Honor. Being incarcerated doesn't matter. Having a national accounting firm doesn't matter. Being in prison doesn't matter. Then what does matter? Yes, Your Honor. That is our position. The court in Boyle said that a taxpayer has a non-delegable duty to file his tax returns. Ultimately, as I raise your argument, it's simply that. You either do it, taxpayer yourself, or you're in for the penalties. If you don't get a timely filing, you have no excuse for it. In other words, there is no excuse for late filing. Well, Your Honor, that's correct. If you have a disability, you're in a coma. That's correct, yes. If a taxpayer is truly unable to effect a timely filing, for example, if he is mentally incapacitated, then in that case, Boyle does contemplate an excuse. But taxpayers here allege that he committed a crime that put him in prison, and that is a very different situation. Well, I'm going to speak of mental incapacitation or illness. It's an inability to do so. And the government has locked him up, legally so, and limited his causes. Let's assume for the moment that him being incarcerated, contrary to your argument that he still had plenty of access, that he didn't have access. That is, in the system he was in, he could not know what had happened to him. Then that's not sensitive. It doesn't turn on the quality of the agent. I mean, it's non-delegable unless the only question is what prevented him from doing so. He physically couldn't leave to do it. We know that. He couldn't really. Given the complexity of this return, I don't see how from a prison he could personally have filed it, assuming he had the ability to do it. So what it translates to is there is no answer. In other words, if your taxpayer returns not filed, the penalty is due. That's your reading of the Supreme Court in Boyle. And that's a standard that Boyle has set. A reasonable cause, a reasonable cause. And we go through the checklist of a plausible thing. No, no, no, no, no. But your argument is I hear it boils down to an agent is just your risk. That's correct, Your Honor, and that's what this Court has said in cases like McGee. A taxpayer relies on an agent at his own risk, and that's a law. While that result might seem harsh, Your Honor, it's critical to ‑‑ It's not reasonable to use an agent. That's what it boils down to. That's correct. It's critical to enforcing the tax laws, as the Court explained in Boyle. Between the IRS and taxpayers who choose to rely on agents, the IRS should not have to bear the burden of late returns and late payments. Congress enacted Section 6651 not to punish taxpayers but to protect the revenue. And if taxpayers can avoid these penalties by using their own or their agent's misconduct as a defense, it would blunt the statute's objective. I understand your argument for the justification of the rule, but the question is what the Supreme Court said here, exactly what the reach of that is. Well, Your Honor, courts of appeals have held following Boyle, for example, that an agent's misconduct does not establish reasonable cause. So taxpayer argues here that he exercised ordinary business care and prudence in relying on his agent because he was in prison. And we don't dispute, Your Honor, that taxpayer exercised some care in following up with his agent. When you say that an agent's misconduct or failure to follow is no excuse, that's an indirect way of saying that only the taxpayer can do so because we start from the premise it didn't get filed. That's correct, Your Honor. Indeed in Boyle, the Eighth Circuit, in affirming a 12B6 dismissal, held that a disability is a high bar that is not satisfied if the errant agent is subject to the control of the principal whether the principal sufficiently exercised it. High bar implies that there is space on the top. Yes, Your Honor. If taxpayer... How do you clear the bar? If taxpayer had, for example, alleged that he had no meaningful way to communicate with his agent whatsoever in prison... This is on a 12B6 motion, right? That's correct, Your Honor. But taxpayer alleged here that he was able to execute and revoke a universal power of attorney. And he was able to revoke that universal power of attorney in Texas from prison in Colorado. He was also able to appear in person at this trial against his agent and to obtain a judgment against his agent. So his contention that he was not able to do anything is not supported by his allegations. Taking his allegations as true, he's not plausibly alleged that he had reasonable cause or that he was disabled here. How did he find out about the embezzlement? Remind me. It doesn't say in the record, Your Honor. In his affidavit at the record, page 33, he just states that he was able to find out about it and then he discharged his agent. That's something I'm curious about, Judge Stewart.  They don't want to tell us. Why do we have an affidavit in a 12B6 motion? I'm sorry? Why do we have an affidavit in a 12B6 motion? Your Honor, he submitted the affidavit in support of his complaint and the district court . . . It was a foreign complaint. The complaint attached to it an affidavit. Yes. Yes, Your Honor. Yes. So the taxpayer also argues that he was unable to conduct business over the phone with his CPA who was far away, and as I noted, he was able to do all of these things while he was in prison in Colorado. Taxpayer also alleged that he was able to make more than $3.4 million from 2012 to 2015, and for that reason, he doesn't satisfy another criteria under the relevant Treasury regulation for a disability. That is, he would not be able to show that he would suffer an undue hardship from having to pay his taxes timely. Going back to the disability point, I'd like to also call your attention to the decision in Vaughn. In Vaughn, the Sixth Circuit held that an agent's embezzlement of millions of dollars did not render the taxpayer disabled because a disability is something that is beyond the taxpayer's possible control and oversight. And Vaughn, in that case, like Lindsay in this case, retained the absolute right to revoke his power of attorney's powers at any time and for any reason. And so the district court correctly applied these authorities, Deaton, Oyl, that I referenced earlier, and Vaughn, to hold that where the taxpayer could have exercised control over his agent, even if he did not, reasonable cause does not exist. And again, taxpayer alleged here that he selected his agent while he was in prison, and later while he was still in prison, and he fired his agent after finding out about his agent's embezzlement. He could control his agent, but that means that he could have controlled his agent in the sense that he compelled the agent to file a return. I don't know what you mean, but he could have controlled the agent. Your Honor, he had the ability to choose who his agent was. He had employed a CPA before he went to prison to file an extension request on his 2012 tax return, and that is actually the person who ended up filing his... What it comes down to, though, is you frame the law as simply that it is the taxpayer's risk if you rely on an agent. It's not a matter of exercising control, not control. Your control is that you direct him to file your return, and then the violation is that he doesn't file the return, and so it's over. He owes the taxes. That is what Boyle says, Your Honor. I would also note, Your Honor, that taxpayer... He has no... Before he has an opportunity to exercise the control, the school's out. He had the ability to choose whether he wanted to... What comes down to any choice of an agent is not sufficient. You cannot rely on an agent, despite the reasonableness, of course. You're just taking off limits, and off limits the use of an agent to file your tax returns. It doesn't matter if it's a national accounting firm. It doesn't matter... Whatever. It's... That's right, Your Honor. Boyle involved in a state tax return, and a businessman in that case, that was a taxpayer, was appointed executor of his mother's estate. And the Supreme Court recognized that he did not have much experience in federal estate taxation, and the Court said that he had reasonably hired a probate attorney to help him. But nevertheless, the Court also held that he had a non-delegable duty to ensure a timely filing, and that he did not have reasonable cause. Boyle explains that one does not have to be a tax expert to know that tax returns have fixed filing dates, and that taxes must be paid when they are due. Although he has a lot of money here, the result here is the same as if he hadn't have been a millionaire, isn't it? I mean, the rule cuts across people who don't have this kind of resource. It's the same deal. That's correct. So because he's got a whole bunch of money, why should he get looped out? Because he's got a whole bunch of money when Joe Schmoe, if he had done the same thing, would still be in the same boat. Isn't that correct? Well, Your Honor, in this case, you are correct that the taxpayer has a lot of money, but I would also... No, I'm just saying the rule you're seeking in force cuts the same, although Boyle is a case with a state tax. Here you've got somebody with a googop of money and resources. So from my standpoint, the way I'm reading the case is the rule cuts the same if it had been somebody more impecunious. Isn't that correct? That's correct, Your Honor, unless a taxpayer shows that they are unable... Unless they show the factors. Unless they show they're unable to pay. Which he doesn't plead. That's correct, Your Honor. Which he doesn't plead. And coming back to the 12B6, the court says, I'm granting, he had an opportunity to amend, didn't you say? All right, is there anything in the record where he puts a proposed amendment of other facts and all of that sort of stuff about other things? Is there anything showing that? No, Your Honor. So he doesn't amend. That's right. So he stands on what he filed. That's right, and that's not enough here, Your Honor. As I was saying, taxpayer also states that, you know, he was assessed these three penalties. But the taxpayer alleged that he fired... We'd really be making new law to say, in this case, given the record here, we'd be carving out an outlier. I agree, Your Honor. I think that... And the only differentiation is that some guy got a whole bunch of megabucks who kept getting himself in and out of prison on his own deal and was able, because of his money, he was a beneficiary of a trust. He knew people who could do stuff. He managed to do it. He wasn't in solitary. He wasn't illiterate, that they couldn't read his papers. And he did all this. I get it, he doesn't like to pay the taxes. I don't either. I got a file of mine by June the 15th because Louisiana was in the weather deal. I just write the check and let it go. I mean, I'm just saying that's not evidence, but I'm just having a hard time working through this as how we wouldn't be creating a severe differentiation in this case based on the facts that are here. It's a 12B6, but it just looks like to me it slices the same any way going down. So I'm just saying tell me what I'm missing. Your Honor, we completely agree with you. We think that Boyle and the cases that we cite in our brief at pages 14 to 19 establish that taxpayer cannot allege reasonable cause on these facts as a matter of law. And I would also note here that taxpayer could have mitigated his penalties, Your Honor. He fired his agent on April 16, 2014, and thus his agent was not his power of attorney for all of the tax years at issue here, 2012 to 2015. He was, to Judge Wilson's point, somehow able to find out about his agent's embezzlement in prison, and at that point he could have contacted his CPA who he worked with before to make sure that his taxes had been taken care of. At that point he would have discovered that they had not, and he could have sought extensions from the IRS or appointed a new agent to take care of his taxes. Presumably he would have appointed his CPA who ultimately then did take care of his taxes. Another question I had, Counsel, I guess I'll ask Counsel Officer, too. One of the years in question is the 2015 tax year. Yes, Your Honor. He was out of prison in 2015. Yes. The 2015 tax return wouldn't have been due to the beginning of April 15, 2016. That's correct, Your Honor. Why does that one even get swept into this? Well, Your Honor, he also did not timely pay or file that tax return. That's what I'm saying, that he was out of prison there. Whatever disability or anything like that would have been gone. That's absolutely correct, Your Honor. He waited until he got out of prison to take care of his taxes, and if he had taken action when he found out about his agent's embezzlement, his penalties here would certainly have been lower. But he paid with interest. But he paid with interest, I assume. That's correct. He was fully paid. Lay-in payment that still didn't reduce your revenue. In your audit technique manual, one of the recitations refers to the taxpayer's unavoidable absence. Yes, Your Honor. The Cherry case is the only case that we are aware of that discusses an unavoidable absence, and there it says that incarceration is not an unavoidable absence. It does not have very much reasoning, Your Honor, and taxpayer is correct that that case also says that incarceration does not establish reasonable cause. If there are no further questions, we ask the Court to close. One more question, and I don't mean to belabor it, but I'm going to ask you the opposite of the question I asked counsel about how each of the factors have been dealt with in one case or another, and the district court details that. But his argument, as I understand it, is all the factors together somehow equal a different result. In other words, this combination of factors should at least survive a motion to dismiss. So answer that for me. How's the magistrate judge and the petitioner or the appellant, how are they not correct that because of this unique combination of factors, somehow there is reasonable cause here? Your Honor, we are aware of no case that would say that. Several of the cases that we have cited have relied on several factors. For example, incarceration and a lack of access to your tax return documents, for example. And those cases have also held that there was no reasonable cause. We see no reason to not affirm the 12B6 dismissal here, given, as you say, long lines of precedent foreclosed his claim on all of these factors. Does the taxing authority have the discretion to not seek penalties, or are they compelled by law to seek them? Your Honor, the penalties are mandatory, unless the taxpayer meets its heavy burden to show reasonable cause. All right. Thank you. Thank you. We ask this Court to affirm. Thank you for your briefing and your responses to the Court's questions. All right. Mr. Lipa, you have rebuttal, sir. Thank you. As dispassionately as I can be. I believe that the previous argument shows what I'm saying, in that the government is sweeping all three penalties under Boyle, and the three penalties require a different analysis. It's not all under Boyle. Specifically, the Treasury regulations under the failure to pay penalty are very lengthy. It's not one sentence like it is in regard to the failure to file penalty. And specifically, as applicable to this case, the Treasury regulation says, a taxpayer will be considered to have exercised ordinary business care and prudence if he made reasonable efforts to conserve sufficient assets in marketable form to satisfy his liability, and nevertheless was unable to pay all or a portion of the tax when it came due. Your Honor, I would respectfully submit that, with regard to the failure to pay penalty, Mr. Lindsay exercised ordinary business care and prudence. He had sufficient assets to pay the tax liability, as evidenced by the fact that he reported millions of dollars of income during these years. His agent was able to successfully embezzle at least $705,000 from him. And finally, he was able to full pay the taxes, penalties, and interest when he did file his tax returns. This is not a case where the government is out money. The government got all of its money plus interest on all of the years plus three different penalties adding up to $423,000. And? I think that's a draconian remedy that is not taking into account the facts and circumstances of this case. And in terms of cases— Well, it's not the government. It's the taxpayers who got the money. I'm sorry, Your Honor? Not the government. It's the taxpayers who get the money. I mean, the IRS collects it, but ostensibly, you know, it goes in the fist of all the taxpayers. Isn't that correct?  I don't—I don't— Yes, sir. So, in terms of the case law, I read you to discount the fact that I'm coming from a footnote in the Boyle case, but I believe that— We're not denigrating, you know, that argument at all. That footnote has been the justification— Well, I get it, but I just didn't hear you say or cite precedent in our circuit or otherwise that have taken the footnote and given critical analysis such that it becomes persuasive or controlling on us. That was my point. Not that the footnote had no meaning, but that's why I said when you come back up, you know, go through. I think you cited—was it Cherry or whatever the case, but that's the point. So, in Boyle, in footnote 6, as well as in the concurring opinion, the Supreme Court recognized that the IRS accepts at least eight different excuses for late filing, and the court noted that the principle underlying those acceptable excuses was that a taxpayer should not be penalized for matters that are beyond his control. The court then said in footnote 6, this principle, that is that a taxpayer shouldn't be penalized for matters beyond his control— I want to ask you a question that I've asked several this week. In the 1 minute and 23 seconds you've got left, articulate the holding that you want us to bring forth in this case on behalf of your client. I would like for the court to hold that my client has established a facially plausible claim for refund of all three penalties because he has established either that he exercised ordinary business care and prudence and nevertheless was unable to file his returns on time or that he conserved sufficient assets in marketable form to pay his taxes or that he was effectively disabled by the combination of circumstances that confronted him so as to have reasonable cause to justify reversal of the district court. I will have to say, counsel, I've asked that question at least six times this week. Yours is the best articulation I've heard of somebody articulating. Whether we do it or not is another question, but you had a good, quick grip. Some of the others I asked started giving me argument, but you were ready at the ready to give me the holding. All right, Mr. Lee. Do you have any further questions, Your Honor? All right. Well, we do appreciate your briefing in the case and particularly the responsiveness to the court's questions. It's a serious case, and I certainly don't mean to make light of it by my comments. It takes a lot of money, and that's why we granted oral argument. It's a lot of money in this case, and we don't take the view just because it's the government. The government ought to win, but we wrestle with the factors and so on and so forth, look at the record and all of that, and we'll figure it out. We appreciate it. The case will be submitted with the thanks of the court. This concludes the . . . Yes, sir. You may be excused. Thank you, Mr. Turbeville, for it. This completes the orally argued cases for today. It also completes the work of this panel for this week. The argued cases along with the non-orally argued cases that are on the docket will all be under submission for decision by the court. Madam Clerk, the panel thanks you for your good service this week and all the people that went behind the door to keep us safe and all the bailiffs. With that, the panel stands adjourned.